## Commonwealth v. Quick

*Judd B. Fitze, District Attorney,* for Commonwealth.

*Peter G. Loftus,* for defendant.

GARDNER, *P.J.,* June 10, 1981—Defendant, Floyd Quick, after a jury trial, was convicted of corruption of a minor, Crimes Code, 18 Pa.C.S.A. §6301, and indecent exposure, Crimes Code, as amended, 18 Pa.C.S.A. §3127.

At the conclusion of the Commonwealth's case, the court sustained a demurrer to a third charge, indecent assault, Crimes Code, 18 Pa.C.S.A. §3126.

From the evidence adduced at trial, the jury could well have found that defendant touched or rubbed the vaginal area of an eight-year, eleven-month old girl, kissed her on the lips and breasts and rubbed his penis against the child's body. The evidence would also support a conclusion that defendant admitted this conduct.

The evidence could also have allowed a conclu-

sion that the child did not resist defendant's attentions.

## I

Defendant first contends that we erred in not sustaining his demurrers to the charges of corruption of a minor and indecent exposure as well as indecent assault.

Our action was required by the wording of the statute, §3126, as amended, proscribing indecent assault: "A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if: (1) he does so without the consent of the other person. . . ."

Since we believe that the Commonwealth's own case indicated that the child's actions could possibly be viewed as consensual, we felt that the required proof of lack of consent was not present, and therefore, the charge must fall.

In contrast, neither of the charges of corruption of a minor or indecent exposure are concerned with the state of mind of the victim.

The best argument of defendant is that, in the statutory definition of indecent exposure, it is necessary that defendant be proven to have acted with the attempt to affront or alarm. It is, therefore, defendant's mental state that is the subject of inquiry. See Com. v. Back, 255 Pa. Superior Ct. 603, 389 A. 2d 141 (1978).

Consent has no relevance to the crime of corruption of minors: Com. v. Collin, 233 Pa. Superior Ct. 300, 335 A. 2d 383 (1975), citing Com. v. Blauvelt, 186 Pa. Superior Ct. 66, 140 A. 2d 463 (1958); Com. v. Wolff, 273 Pa. Superior Ct. 27, 416 A. 2d 1072 (1979).

On reflection, we feel we may have erred in sustaining the demurrer on the charge of indecent assault, since it is doubtful whether the victim in this case could have been capable of consent, as that term would have to be used vis-a-vis the conduct of defendant, an adult. Nonetheless, if this was error, defendant obviously cannot complain.

We would finally point out that the issue raised by defendant has a certain moot quality, since it is probable that the indecent exposure conviction will "merge," for the purposes of sentence with the conviction on the charge of corruption of a minor.

## II

Next, defendant argues that the following reference, in the testimony of the youthful victim, was to possible prior criminal activity, and, hence, a mistrial should have been granted:

". . . I said, 'Mommy, Floyd did it again', and then she said, 'What did he do again?' . . ."

Objection by Mr. Loftus.

" . . . I said to her, 'He did it again'. " (R. 24)

This court made vigorous efforts to avoid any possible prejudicial interpretation of the prosecuting witness's account of her report to her mother. First, the following statement was made to the jury at the time of the incident:

"You will disregard that statement. You will from that statement or from any lingering memory draw no conclusion whatsoever which has anything to do with guilt or innocence. . . ." (R. 25, 26).

And during the charge, the court instructed the jury as follows:

"In addition, in this case there has been ample testimony that the defendant has no prior criminal

record. If any part of the testimony received in this case suggests otherwise or indicates any prior criminal activity, such testimony is unlawful and must be carefully and completely disregarded by you when you go into the question of the defendant's guilt or innocence on the charges in this case." (R. 119)

We cannot believe, particularly in view of the court's admonition and instruction to the jury, that this brief reference in the testimony of a witness so young was sufficient to have required the trial to be aborted.

Finally, the evidence of guilt in this case was so overwhelming that any possible error in regard to this incident must be deemed harmless.

## III

Defense counsel, at argument, urged his third contention as one of his two most important grounds for post-trial relief. In this assertion, defendant submits that the court erred in refusing to allow testimony concerning "daydreams" by the prosecuting witness and certain of her prior statements and examples of conduct.

The so-called "daydream" sequence is set forth on page 40 of notes of testimony. An objection on the grounds of irrelevancy is made to the following question put by the defense counsel to the victim's mother:

"Did she ever tell you what her daydreams are about?"

The court, on the record, overruled the objection by the district attorney. Defense counsel, however, requested a sidebar conference which was not of record.

Following the conference, no further effort by de-

fense counsel in this journey into the subconscious was made.

The record is not sufficient to preserve any issue concerning this contention, but what can be gleaned from the question as defense counsel's intent can certainly be said to be an attempt to elicit hearsay. Further, inquiries such as this could only be relevant if the conduct or attitude of the victim was a legitimate subject of inquiry, and it is not. See the discussion at part I, supra.

Within this contention, defendant also argues that we erred in refusing defense counsel permission to produce the testimony of a sister-in-law of defendant to the effect (as set forth in an offer of proof at sidebar) that the youthful victim had "a tendency to hug the men and to sit on their laps, and that on one occasion when (the potential witness's) husband was putting up a stonewall and was constructing a stonewall, Melissa said to him, 'Quit looking up my dress'. " (R. 83)

This proposed defense effort was an excursion into irrelevancy. Only if the victim's conduct was the subject of a pertinent inquiry would this be admissible, and then only as to the non-hearsay segments. See the discussion, part I, supra.

### IV

Defendant then contends that we erred in refusing to admit testimony that certain witnesses were willing to trust the defendant with their daughters.

Since we regard this assertion as, at best, esoteric, we find it difficult to discuss it, since such an effort lends a status which the contention ill-deserves.

However, we deem it sufficient to say that surrender to defendant's offer would be tantamount to a delegation of the jury's role to defense witnesses.

We agree with the district attorney that defend-

ant's offer could not be equated with one to produce reputation testimony, as the defense presently argues. See Com. v. Boone, 467 Pa. 168, 354 A. 2d 898 (1975), cited by the district attorney.

## V

Next, defendant makes his second major argument. He asserts that a mistrial should have been granted when the district attorney, in summation, said, "This is the type of case which would cause nightmares to you as parents."[1]

---

1. No record was made of the closing statements by counsel. During the summation, defense counsel made an objection to a statement made by the district attorney, and the objection was sustained.

No effort, however, was made by defense counsel to immediately place the alleged improper statement made by the district attorney on the record.

Upon the conclusion of the district attorney's summation, defense counsel requested a sidebar conference and at the conference, placed on record the alleged statement made by the district attorney as set forth in the main body of this opinion.

It is questionable whether defendant's effort was sufficient to follow the procedure as set forth in Com. v. King, 227 Pa. Superior Ct. 168, 323 A. 2d 260 (1974), and Com. v. Cisneros, 381 Pa. 447, 113 A. 2d 293 (1955), which held that an objection to remarks made to a jury must be called to the attention of the trial judge at the time of the remarks and cannot be made after counsel is through speaking.

We have decided to treat the issue on its merits, because the most recent case on the subject, Com. v. Adkins, 468 Pa. 465, 472, 364 A. 2d 287 (1976), pointed out the need to require an objection during an argument "so that the remarks may be placed in the record at or about the time they are made and thereby ensure accuracy." In Adkins, the summation had been recorded.

We believe that the practice followed by defense counsel was sufficiently close to the time that the remark was made, and, since the district attorney did not object to the quotation made at the sidebar conference following summation, the Cisneros-Adkins procedure has been substantially followed.

Pennsylvania has adopted the American Bar Association's Standards Relating to the Prosecution Function as to summation. Relevent portions are as follows:

"Section 5.8(c). 'The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.'

"(d). 'The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law. . . . ' "

Examples of over-zealous arguments testing similar situations include:

1. "Men are afraid to walk the streets themselves'"

"People don't want to go out at night . . . "

"It might be one of you the next time. It might be you." Com. v. Harvell, 458 Pa. 406, 411, 327 A. 2d 27 (1974)—The court determined these remarks to be "ill-concealed attempts to divert the inquiry from the pursuit of truth and an invitation to give vent to visceral and unreasoned responses."

2. "Tell everybody by your verdict that you are not going to put up with shooting on the street like the wild west." Com. v. Cherry, 474 Pa. 295, 301, 378 A. 2d 800 (1977). (Here the prosecutor also suggested that the jury might themselves be victimized. The court stated that the jury must not be diverted by statements appealing to its emotions or which may lead the jury away from its responsibility to resolve the case on the basis of the facts presented.)

3. An argument involving the right of all citizens to live in a peaceful neighborhood and walk the streets at night was held acceptable in Com. v.

Clark, 280 Pa. Superior Ct. 1, 421 A. 2d 374 (1980). (Here the Superior Court contrasted remarks of limited duration which were not part of an apparent attempt to focus the jury's attention on issues which were not before them with a situation where remarks are repeatedly made and which constituted blatant appeal to the passions of the jury.)

It is to be noted that in Harvell and Cherry the prosecuting attorney made repeated offensive references. In Clark, the possibly objectionable language was limited in duration.

In the instant case, the district attorney's remark was isolated and was not part of a "much longer harangue," Com. v. Clark, supra. Although it presents a close question, we do not believe that one brief reference to the personal experience of a jury constituted an emphasis to the degree necessary to pose a danger of jury inflammation.

## VI

Defendant then contends that the court erred in its statement in the following context:

"Mr. Davis.

Your Honor, I'm going to object to any further questions beyond the scope of direct examination. I didn't question this officer concerning the arrest procedure, so . . . Mr. Loftus can call him as his own witness, if he desires to.

By the court.

Well, yes, he can, and why not expedite the matter and allow the questioning at this time? I mean, it just seems to me that . . .

Mr. Davis.

There is a difference in the manner of questioning.

By the court.

Well, I understand, but I don't think that any major blow to the Commonwealth's case occurs as a result of it. I'm going to overrule the objection." (R. 50, 51)

When viewed in its entirety, it is clear that the court, albeit sarcastically, was indicating to the district attorney that the court's ruling would not impede the Commonwealth in an important way. No rational reading or hearing of the remark would lead to the conclusion that the court was favorably commenting on the quality of the Commonwealth's case in general. It was not so intended, and no harm could have resulted.

We believe that the court's position at the time of trial and now is well-illustrated by the following exchange, which occurred at sidebar:

"Mr. Loftus.

I object to the judge's comment concerning a major blow to the Commonwealth's case. We feel it puts an opinion into the cross-examination testimony which is being elicited from the trooper, and we would ask that it be stricken.

By the court.

The motion is denied. If you had taken time to listen to what the court said, the court was saying that there was no major blow as a result of this having occurred as part of the Commonwealth's case, and I can't see that that in any way does anything. If you wish I'll change my ruling and you can call this witness as your own witness.

Mr. Loftus

That is not my understanding of what was just said.

By the court.

Well, your understanding is incorrect." (R. 51, 52)

## VII

Finally, defendant argues the unconstitutionality of both statutes under which he was convicted.

As to indecent exposure, defendant asserts that under the reasoning of Com. v. Bonadio, 490 Pa. 91, 415 A. 2d 47 (1980), defendant has been denied his constitutional right of equal protection, because the statute in the instant matter prohibits conduct between consenting persons but not if those persons were married.

The instant statute is completely distinguishable from the Crimes Code provision as to voluntary deviate sexual intercourse (the subject of Bonadio), since conduct here only becomes criminal if the defendant "knows his conduct is likely to cause affront or alarm." Proscription of this result, in our judgment, becomes a valid exercise of the police power.

Continuing to cite Bonadio, defendant contends that the statute on corruption of minors denies equal protection, because it relates solely to age. He argues that conduct likely to corrupt committed by a minor rather than an adult is not a violation.

The opinion in Bonadio itself provides at p. 95:

"The threshold question in determining whether the statute in question is a valid exercise of the police power is to decide whether it benefits the public generally. The state clearly has a proper role to perform in protecting the public from inadvertent offensive displays of sexual behavior, in preventing people from being forced against their will to submit to sexual contact, *in protecting minors from being sexually used by adults,* and in eliminating cruelty to animals. To assure these protections, a broad range of criminal statutes constitute valid police power exercises, *including pro-*

*scriptions of indecent exposure,* open lewdness, rape, involuntary deviate sexual intercourse, *indecent assault,* statutory rape, *corruption of minors,* and cruelty to animals." (Emphasis supplied.)

We agree and find the statute here involved a valid exercise of police power.

Defendant has also asserted the unconstitutionality of the crime of corruption of a minor, because it did not specifically define the type of conduct which it purports to proscribe. (This assertion is made in part I of defendant's brief.)

A similar argument was met in Com. v. Burak, 232 Pa. Superior Ct. 499, 505, 335 A. 2d 820 (1975), wherein the Superior Court of Pennsylvania said: " 'Tending to corrupt' . . . is a broad term involving conduct towards a child in an unlimited number of ways . . . Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly." We think Burak binds us, notwithstanding that it was a case of interpretation of a predecessor statute, since the relevant section of that statute is precisely the same as the section of the Crimes Code under which the instant matter proceeded.

### ORDER

And now, June 10, 1981, for reasons set forth in the opinion of even date filed in the above-captioned matter, it is ordered that defendant's motion for new trial and/or in arrest of judgment be and the same is hereby denied.

Defendant is directed to appear before this court for the purpose of sentence on a day to be scheduled by the district attorney of Wyoming County.