J-S10004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EUSEBIO BORGOS-LEON, | |
| Appellant | No. 1483 EDA 2015 |

Appeal from the Judgment of Sentence Entered October 5, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009073-2009

BEFORE:  BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:  **FILED MARCH 01, 2017**

Appellant, Eusebio Borgos-Leon, appeals *nunc pro tunc* from the judgment of sentence of 20 to 40 years' incarceration, imposed after a jury convicted him of involuntary deviate sexual intercourse with a child, 18 Pa.C.S. § 3123(b); unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); corruption of minors, 18 Pa.C.S. § 6301(a)(1); rape by forcible compulsion, 18 Pa.C.S. § 3121(a)(1); rape of a child, 18 Pa.C.S. § 3121(c); and possessing an instrument of crime, 18 Pa.C.S. § 907(a).  On appeal, Appellant seeks to challenge the sufficiency of the evidence to sustain his convictions, as well as his designation as a sexually violent predator. Additionally, his counsel, Dennis Turner, Esq., seeks to withdraw his representation of Appellant pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After

careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

For purposes of our disposition, we need not reiterate the factual and procedural history of Appellant's case, as it was thoroughly set forth by the trial court in its Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, 4/12/16, at 1-6. Rather, we will proceed directly to assessing Attorney Turner's petition to withdraw and **Anders** brief, in which he asserts that the following two issues - preserved by Appellant in a timely-filed Pa.R.A.P. 1925(b) statement - are frivolous:

> I. [Whether the evidence was sufficient] to support the verdict of guilty as to the charges of involuntary deviate sexual intercourse with a child; unlawful contact with a minor…; corruption of minors; rape [by] forcible compulsion; rape of a child[;] and possession of [an] instrument of crime…[?]
>
> II. [Whether] the court erred in finding [Appellant] to be a sexually violent predator … based on the assessment of Doctor Barbara Ziv at [a] Megan's Law hearing as to whether [Appellant] meets the statutory criteria to be deemed a sexually violent predator, as said finding increased the prescribed range of penalties to which [Appellant] was exposed and thus violated his 6[th] [A]mendment right to have a jury find those facts beyond a reasonable doubt[?]

**Anders** Brief at 5 (unnecessary capitalization omitted).

Because Attorney Turner has filed an **Anders** brief and petition to withdraw, we

> must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

**Commonwealth v. Orellana**, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of **Anders** and **Santiago**, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In this case, Attorney Turner's **Anders** brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could

- 3 -

arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. He explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Turner also states in his petition to withdraw that he has supplied Appellant with a copy of his ***Anders*** brief. Additionally, pursuant to a *per curiam* order issued by this Court on December 21, 2016, Attorney Turner filed, on January 3, 2017, a copy of a letter directed to Appellant in which Attorney Turner informs him of the rights enumerated in ***Nischan***. Accordingly, counsel has complied with the technical requirements for withdrawal.

Next, this Court must determine if Appellant's issues are frivolous, and ascertain if there are any other non-frivolous issues he could pursue on appeal. In this vein, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough opinion of the Honorable Sandy L.V. Byrd of the Court of Common Pleas of Philadelphia County. We conclude that Judge Byrd's extensive, well-reasoned opinion accurately disposes of the two issues that Appellant desires to raise on appeal. Accordingly, we adopt Judge Byrd's opinion as our own and conclude, for the reasons set forth therein, that Appellant's issues are frivolous. Additionally, our independent review of the record reveals no other, non-frivolous issues that Appellant could raise on appeal. Consequently, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed.  Petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2017

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      CP-51-CR-0009073-2009



CP-51-CR-0009073-2009 Comm. v. Borgos-Leon, Eusebio
Opinion

v.                                              SUPERIOR COURT



7432053401

EUSEBIO BORGOS-LEON                              1483 EDA 2015

**FILED**

APR 12 2016

<u>OPINION</u>

Byrd, J.                                              April 12, 2016

Criminal Appeals Unit
First Judicial District of PA

After a jury trial commencing on March 29, 2011, defendant Eusebio Borgos-Leon was convicted of involuntary deviate sexual intercourse, unlawful contact with a minor, corruption of minors, rape by forcible compulsion, rape of a child, and possession of an instrument of crime. Defendant's sentencing was deferred until after the Megan's Law hearing was held.

Pursuant to this court's order for an assessment by the Sexual Offenders Assessment Board, Dr. Barbara Ziv, a member of the Board, submitted her report on June 27, 2011. The Commonwealth filed a praecipe on July 7, 2011, requesting a hearing to determine whether defendant should be classified as a sexually violent predator pursuant to 42 Pa. C.S. §9795.4. Following a Megan's Law hearing on September 30, 2011, defendant was declared a sexually violent predator by this court. On October 5, 2011, defendant was sentenced to an aggregate imprisonment term of twenty (20) to forty (40) years in a state correctional institution.

Defendant did not file an appeal. On April 8, 2013, defendant filed a pro se petition under the Post Conviction Relief Act (PCRA). After the appointment of counsel, defendant filed an amended PCRA petition wherein he sought the reinstatement of his appellate rights on

*Commw. v. Eusebio Borgos-Leon*              Page 1 of 18

December 28, 2014. Upon application of defendant and with the agreement of the Commonwealth, his direct appeal rights were reinstated nunc pro tunc on May 15, 2015. A notice of appeal was filed on May 18, 2015. On May 19, 2015, this court ordered him to file a statement of matters complained of on appeal. Defendant filed a preliminary statement on May 28, 2015 due to an incomplete set of notes of testimony. After receiving a complete set of notes of testimony, defendant filed a supplemental statement on December 28, 2015.

## STATEMENT OF FACTS

At trial evidence was presented which when viewed in the light most favorable to the Commonwealth as the verdict winner established the following. Between June 2006 and April 2009, defendant sexually assaulted M.S. by penetrating her vagina and anus with his penis. M.S. was approximately ten (10) years of age in June 2006 and approximately thirteen (13) years of age when the assaults ended in April 2009. These assaults occurred while defendant lived with his girlfriend, Isabella Reyes-Villanueva, in her home with her grandchildren, M.S. and M.S.'s brother, and her mother and the children's great grandmother, Luz Maria Villanueva-Santiago.[1] N.T. 03/30/2011, pp. 24-75, 83-142; N.T. 03/31/2011, pp. 77-126; N.T. 04/01/2011, pp. 13-52.

Before M.S. went to bed, defendant would order her to meet him downstairs in the living room around 2:00 a.m. When she came downstairs, defendant either pulled M.S.'s pants down or ordered M.S. to pull her pants down. On some occasions, defendant penetrated M.S.'s anus with his penis while she knelt on the floor with her face and stomach against the sofa. At some point, defendant would stop the sexual assault and leave, and M.S. would return to her bedroom upstairs. On other occasions, defendant penetrated M.S.'s vagina with his penis during these

---

[1] Defendant began to sexually abuse M.S. shortly after he moved into Ms. Reyes-Villanueva's home in Puerto Rico. At that time, M.S. was approximately eight (8) or nine (9) years of age. Defendant continued to sexually abuse her while he lived with M.S. and her family from June 2006 to April 2009. At the time of trial, M.S. was fifteen (15) years of age.

sexual assaults. He forced M.S. to place her legs upward against his chest while she lay on her back on the sofa. At some point, defendant would stop the sexual assault and leave, and M.S. would return to her bedroom upstairs. At trial, M.S. testified that defendant did not ejaculate and that he never wore a condom when he performed these acts of sexual assault. The sexual assaults occurred while M.S.'s grandmother, great grandmother, and brother were sleeping in their rooms upstairs. M.S. testified that this happened almost every Saturday while they lived in Philadelphia. N.T. 03/30/2011, pp. 83-142.

At trial, M.S. stated that she followed defendant's orders because she was afraid that he would hit her if she did not comply. However, there were times when she would sleep past 2:00 a.m., and defendant would be angry with her the next day because she did not meet him downstairs. M.S. told no one about being sexually abused by defendant. She stated that she would forget about the sexual abuse the next day. She testified that, aside from defendant sexually abusing her, she used to think that he was a good person because he would always buy things for her and her brother, and treated them nicely. Her grandmother and great grandmother testified that they knew that defendant went downstairs in the middle of the night, but they did not know that he was sexually abusing M.S.[2] This changed one early morning on or around April 13, 2009, when defendant pulled out a knife and forced M.S. to engage in anal and vaginal sex with him. Defendant was angry with M.S. because she had failed to meet him downstairs at 2:00 a.m. as ordered. Instead, she went downstairs around 5:00 a.m. When she came downstairs, defendant ordered M.S. to lie on the sofa and to cover her mouth with two towels. M.S. did not initially comply and began to cry. Defendant then forcefully squeezed her face and placed the sharp blade of the knife against the right side of her neck. In fear, M.S. complied and

---

[2] At trial, M.S.'s grandmother and great grandmother both testified that they were taking medication that helped them sleep through the night during this time period.

covered her mouth with the towels. Defendant ordered her to pull her pants down and to go to a chair in the living room, and she did. Defendant pulled down his pants and penetrated M.S.'s anus with his penis while her knees were bent on the chair. M.S. eventually moved away because the penetration caused her pain. Defendant stopped, and put M.S. on the sofa where he stood in front of her and put M.S.'s legs up against his chest with her back on the sofa. Defendant then penetrated M.S.'s vagina with his penis. M.S. pushed defendant away when the penetration began to hurt and he released her. N.T. 03/30/2011, pp. 83-142; N.T. 03/31/2011, pp. 77-126.

M.S. then returned upstairs to the bedroom she shared with her great grandmother, Ms. Villanueva-Santiago. M.S. was crying and shaking and had bruises around her neck. When M.S. entered the bedroom, Ms. Villanueva-Santiago asked her what happened. Ms. Villanueva-Santiago stated that she observed M.S. appearing "like a mess, like she was being pushed through a knoll, washing machine with rolls. Her face, the neck." M.S. told Ms. Villanueva-Santiago how defendant had sexually abused her earlier that morning. She also told Ms. Villanueva-Santiago that defendant had sexually abused her on prior occasions. M.S. told Ms. Villanueva-Santiago that she had not told anyone because she was afraid of defendant hitting her. Ms. Villanueva-Santiago told M.S. to tell her grandmother the next day. Because M.S. could not fall asleep, Ms. Villanueva-Santiago escorted M.S. downstairs after M.S. showered and dressed. They came downstairs and encountered defendant, who shook his finger at M.S. and said: "Maybe I will not do to you what I wanted to do." On her way to the kitchen, Ms. Villanueva-Santiago observed defendant's tee-shirt and the towels he used on a table in the living room. She saw the knife on a corner table in the dining room. N.T. 03/30/2011, pp. 83-142; N.T. 04/01/2011, pp. 13-52.

Afterwards, M.S. went to school. Although Ms. Reyes-Villanueva had been raising M.S. since she was about four-months-old, M.S.'s mother, Ivette Zabala, visited daily to see M.S. and her brother after school. When M.S. returned home from school, Ms. Reyes-Villanueva observed defendant shaking his finger at M.S. as she sat in the dining room doing her homework with Ms. Zabala's help. Ms. Reyes-Villanueva asked defendant why he was shaking his finger at M.S., and he replied: "For her not to lie to me." While M.S. was in the dining room, she began to tell Ms. Zabala about being sexually abused by defendant and told her that she was unable to go into details because defendant was in the next room. As a result, Ms. Zabala took M.S. to her aunt's house which was about three (3) to four (4) houses down and across the street so that M.S. could talk to her outside of defendant's presence. Ms. Zabala then returned and asked Ms. Reyes-Villanueva to come with her to the aunt's house. When Ms. Reyes-Villanueva arrived, M.S. told them that defendant had sexually abused her earlier that morning and that he had been sexually abusing her since they lived in Puerto Rico. M.S. told them that defendant would sexually abuse her often on Saturdays even if she was menstruating at the time. M.S. was crying and became further upset when Ms. Reyes-Villanueva stated that she wanted to report the sexual abuse to police. N.T. 03/30/2011, pp. 24-75, 83-142; N.T. 03/31/2011, pp. 77-126; N.T. 04/01/2011, pp. 13-52.

After M.S. disclosed the sexual abuse to her grandmother, Ms. Reyes-Villanueva returned home and confronted defendant. Ms. Reyes-Villanueva told defendant to leave because he sexually abused M.S. Defendant denied sexually abusing M.S. Ms. Reyes-Villanueva then left her house and went back to the aunt's house to check on M.S., who was still upset. About fifteen (15) minutes later, Ms. Reyes-Villanueva returned home, but she did not see defendant. He had packed his belongings and left for Puerto Rico. M.S.'s family did not initially report this

sexual abuse to police because they were afraid that M.S. would harm herself. About a week later when M.S. calmed down, M.S. went to the 25th District Police Station with her mother and grandmother. They met Officer Maria Santa who prepared an incident report and transported them to the Special Victims Unit, where they provided signed statements to Detective Joseph Jenkins on April 20, 2009. N.T. 03/30/2011, pp. 24-75, 83-142; N.T. 03/31/2011, pp. 77-166; N.T. 04/01/2011, pp. 7-8, 13-52, 60-64.

On May 19, 2009, M.S. was physically examined by Dr. Maria McColgan, a child abuse pediatrician. At trial, Dr. Sarah Frioux testified as an expert in child sexual abuse and stated that she had reviewed Dr. McColgan's report. Dr. Frioux testified that a traumatic injury was not observed during the examination and that a normal examination was consistent with M.S.'s history of being slightly penetrated in her vagina and anus. Dr. Frioux further testified that any possible trauma to M.S.'s vaginal and anal areas could have potentially healed given that the examination was conducted approximately one month after the sexual abuse was reported. Dr. Frioux noted that traumatic injuries can heal within four (4) days of the sexual abuse. N.T. 03/31/2011, pp. 10-56.

Defendant was arrested and transported from Puerto Rico to Philadelphia on May 21, 2009. N.T. 04/01/2011, pp. 8-9. At trial, defendant testified and denied sexually abusing M.S. However, he admitted to being angry because no one in the house listened to him after he was no longer working and began receiving temporary disability payments.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Defendant raised the following issues in his supplemental statement of matters complained of on appeal, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b):[3]

1) The evidence was insufficient to support the verdict of guilty as to the charges of Invol. Deviate Sexual Intercourse W/Child; Unlawful Contact With Minor – Sexual Offenses; Corruption of Minors; Rape Forcible Compulsion; Rape of Child and Poss Instrument Of Crime W/Int.

2) The court erred in finding defendant to be a Sexually Violent Predator (SVP) based on the assessment of Doctor Barbara Ziv at Megan's Law hearing as to whether defendant meets the statutory criteria to be deemed a sexually violent predator, as said finding increased the prescribed range of penalties to which defendant was exposed and thus violated his 6th amendment right to have a jury find those facts beyond a reasonable doubt.

## DISCUSSION

Defendant contends that there was insufficient evidence to support his convictions of involuntary deviate sexual intercourse, unlawful contact with a minor, corruption of minors, rape by forcible compulsion, rape of a child, and possession of an instrument of crime. A person is guilty of involuntary deviate sexual intercourse when he has engaged in deviate sexual intercourse with a complainant by forcible compulsion or "by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa. C.S. §3123(a)(1)-(2). "Forcible compulsion" is defined as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa. C.S. §3101. The element of forcible compulsion or threat of forcible compulsion is "inherent in the situation in which an

---

[3] The following is a verbatim account of defendant's Statement.

adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ('prevent resistance'), without the use of physical force or violence or the explicit threat of physical force or violence." *Commonwealth v. Rhodes*, 510 Pa. 537, 557, 510 A.2d 1217, 1227 (1986). Furthermore, "[t]he determination of whether moral, psychological or intellectual force exists in a given case is to be made in light of the totality of the circumstances, and important factors to be considered include the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and the physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination, or custodial control over the victim, and whether the victim was under duress." *Commonwealth v. Ruppert*, 579 A.2d 966, 968 (Pa. Super. 1990).

Involuntary deviate sexual intercourse may also occur when a defendant has engaged in deviate sexual intercourse with a complainant "who is less than 16 years of age and the [defendant] is four or more years older than the complainant and the complainant and the [defendant] are not married to each other." 18 Pa. C.S. §3123(a)(7). Deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal." 18 Pa. C.S. §3101. According to Section 3101 of the Crimes Code, "[s]exual intercourse" is a term that "includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa. C.S. §3101. In

*Commonwealth v. Kelley*, 569 Pa. 179, 186, 801 A.2d 551, 555 (2002), the court explained that "the phrase 'intercourse per os or per anus' as describing oral and anal sex."

In this case, M.S. testified that defendant frequently performed anal sex on her. M.S. testified that defendant penetrated her anus with his penis while she knelt on the floor with her face and stomach lying on the sofa. This sexual offense occurred while defendant lived with M.S. and her family. He was the boyfriend of M.S.'s grandmother and acted as a parental or authority figure toward M.S. and her brother. Before M.S.'s family learned of this sexual abuse, defendant was respected and loved as if he was a family member. The element of forcible compulsion was certainly present in this case where M.S. was instructed by a trusted authority figure to submit to the sexual activity. Based on these facts, there was sufficient evidence to convict defendant of involuntary deviate sexual intercourse.

A person is guilty of unlawful contact with a minor when "the following elements are satisfied: (1) the person intentionally contacted a minor; (2) for the purpose of engaging in prohibited activity, ... and (3) either the person initiating the contact or the person being contacted was within this Commonwealth." *Commonwealth v. Oliver*, 946 A.2d 1111, 1113 (Pa. Super. 2008) (citing 18 Pa. C.S. §6318(a)). Here, the evidence shows that defendant, an adult male, intentionally touched and penetrated the anus and vagina of M.S., a minor, while he lived with her family in her grandmother's home. Defendant's intent to have sexual contact with M.S. was shown through his touching and penetration of her vagina and anus while she was between the ages of ten (10) and thirteen (13). It was also shown through other inappropriate sexual behavior such as ordering her the night before to meet him downstairs in the living room so that he could commit these sexual offenses. Based on these facts, the Commonwealth presented sufficient evidence to convict defendant of unlawful contact with a minor.

Section 6301(a)(1)(i) of the Crimes Code states that "whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age ... commits a misdemeanor of the first degree." 18 Pa. C.S. §6301(a)(1)(i). In *Commonwealth v. Mumma*, 489 Pa. 547, 414 A.2d 1026 (1980), the court held that "[t]he Commonwealth need not prove that the minor's morals were actually corrupted. .... Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant 'tends to corrupt' the minor's morals." *Id.*, 489 Pa. at 555, 414 A.2d at 1030 (citation omitted). This offense is ultimately "a separate offense, which requires proof of nothing more than the specific underlying act alleged." *Commonwealth v. Decker*, 698 A.2d 99, 102 (Pa. Super. 1997).

Indeed, "[i]t would be impossible to enumerate every particular act against which our children need be protected." *Commonwealth v. Burak*, 335 A.2d 820, 822 (Pa. Super. 1975). As a result, this offense encompasses actions that "would offend the common sense of the community and the sense of decency, propriety, and morality which most people entertain, are actions that tend to corrupt the morals of a minor." *Commonwealth v. Dewalt*, 752 A.2d 915, 918 (Pa. Super. 2000) (quoting *Decker*, 698 A.2d at 101). This offense "can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children." *Decker*, 698 A.2d at 101 (quoting *Commonwealth v. Todd*, 502 A.2d 631, 635 n.2 (Pa. Super. 1985)). It is also important to note that "consent is never an issue for proof of a corruption of minors charge, because the statute ... places the guardianship of minors' morality upon adults." *Commonwealth v. Anderson*, 550 A.2d 807, 809 (Pa. Super. 1988).

At trial, M.S. testified that defendant forced her to engage in sexual activity while they lived in Philadelphia when she was about ten (10) years old up until she turned thirteen (13) years of age, well before she was emotionally, psychologically and physically mature for that type of exposure. By committing these sexual offenses, defendant breached the family's trust in him being a responsible adult who helped the grandmother provide a safe and nurturing home environment for her grandchildren. Indeed, defendant's conduct violated M.S.'s well being by continuously abusing her sexually. Defendant's inappropriate sexual contact and sexually charged conduct toward M.C. offended the common sense of the community and the sense of decency and morality that is expected from adults. Based on the foregoing, there was sufficient evidence to convict defendant of corrupting the morals of a minor.

Defendant was also found guilty of rape by forcible compulsion. Section 3121(a) states that "[a] person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: (1) [b]y forcible compulsion[;] [or] (2) [b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa. C.S. §3121(a). *See Commonwealth v. Hitchcock*, 523 Pa. 248, 251, 565 A.2d 1159, 1161 (1989) (explaining that rape is "any forcible penetration of the three defined orifices of the body of a female by a male"). During the last incident, when M.S. was about fourteen (14) years of age, defendant forced M.S. to engage in sexual intercourse with him. While brandishing a knife, defendant forced M.S. to cover her face with a towel and go to a chair where he began to penetrate his penis into her anus. Defendant then forced M.S. to lie down on a sofa where he penetrated his penis into her vagina. Defendant's act of brandishing a knife while he forced M.S. to engage in sexual intercourse with him certainly constitutes rape by forcible compulsion. Thus, there was sufficient evidence to convict him of this offense.

The offense of rape of a child is committed "when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa. C.S. §3121(c). The record shows that defendant engaged in sexual intercourse with M.S. while she was ten (10) years of age and continued up until she was thirteen (13) years of age. Defendant penetrated M.S.'s vagina with his penis while she was on the sofa. While defendant stood in front of M.S., her legs would be up against defendant's chest, and her back lying on the sofa. Defendant committed these acts while M.S. was less than thirteen (13) years of age. Consequently, there was sufficient evidence to convict defendant of rape of a child.

A defendant is guilty of possession of an instrument of crime when he "possesses any instrument of crime with intent to employ it criminally." 18 Pa. C.S. §907(a). An instrument of crime is defined as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa. C.S. §907(d). In this case, M.S. testified that defendant used a knife while he committed the crimes of involuntary deviate sexual intercourse, unlawful contact with a minor, corruption of minors, and rape by forcible compulsion. *See Commonwealth v. Allen*, 466 Pa. 474, 353 A.2d 452 (1976) (holding that a defendant possessed an instrument of crime when he used a knife to commit crime). Thus, there was sufficient evidence that defendant was guilty of this offense.

Defendant next claims that this court erred in deeming him to be a sexually violent predator. In reviewing the trial court's classification of defendant as a sexually violent predator, the appellate court does not weigh the evidence nor does it make credibility determinations. *Commonwealth v. Feucht*, 955 A.2d 377 (Pa. Super. 2008). The trial court's determination will be reversed "only if the Commonwealth did not present clear and convincing evidence to enable

the court to find each element required" by statute. *Id.* at 382. In *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006), the court reiterated that " '[t]he clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.' " *Id.* at 534 (quoting *Commonwealth v. Maldonado*, 576 Pa. 101, 109, 838 A.2d 710, 715 (2003)).

Pursuant to 42 Pa. C.S. §9799.12, a "sexually violent predator" is defined as:

> An individual determined to be a sexually violent predator under section 9795.4 (relating to assessments) prior to the effective date of this subchapter or an individual convicted of an offense specified in:
>
> (1) section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10) (relating to sexual offenses and tier system) or an attempt, conspiracy or solicitation to commit any offense under section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10);
>
> (2) section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6); or
>
> (3) section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9)
>
> who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section 9799.24(relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. The term includes an individual determined to be a sexually violent predator or similar designation where the determination occurred in another jurisdiction, a foreign country or by court martial following a judicial or administrative determination pursuant to a process similar to that under section 9799.24. In addition, the term shall include any person convicted between January 23, 2005, and December 19, 2012, of any offense set forth in section 9799.13(3.1) (relating to applicability) determined by a court to be a sexually violent predator due to a mental abnormality or personality disorder that made the person likely to engage in predatory sexually violent offenses, which person shall be deemed a sexually violent predator under this subchapter.

In proving that defendant meets the statutory criteria to be considered a sexually violent predator, the Commonwealth must first show that defendant has been convicted of the sexual offenses listed in Section 9799.14 of Megan's Law, 42 Pa. C.S. §9799.14. 42 Pa. C.S. §9799.12. Defendant was convicted of corruption of minors, unlawful contact with minors, rape by forcible compulsion, rape of a child, and involuntary deviate sexual intercourse. These offenses are listed in Section 9799.12 of Megan's Law, 42 Pa. C.S. §9799.12, as sexually violent offenses. *See* 42 Pa. C.S. §9799.12 (citing 42 Pa. C.S. §9799.14(b)(8); 42 Pa. C.S. §9799.14(c)(5); 42 Pa. C.S. §9799.14(d)(2); 42 Pa. C.S. §9799.14(d)(4)). Thus, the Commonwealth met the first threshold in classifying defendant as a sexually violent predator.

After such showing, the Commonwealth must establish that defendant is a sexually violent predator "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa. C.S. §9799.12. A mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* Predatory behavior is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

In *Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008), the court noted that "a Board report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence." At the Megan's Law hearing, the Commonwealth presented Dr. Ziv's expert testimony and her written report. Dr. Ziv opined with a reasonable degree of psychological certainty that defendant met the criteria for a sexually

violent predator, an opinion consistent with that contained in her report. N.T. 09/30/11, p. 12. Dr. Ziv based her expert opinion on her review of eighteen (18) sources of information, including but not limited to, the criminal complaint, reports, statements, and other records obtained from the Philadelphia Department of Human Services, the Child Protection Program at St. Christopher's Hospital for Children, the Philadelphia Police Department, and the Sexual Offenders Assessment Board. In addition to reviewing this information, Dr. Ziv reviewed the presentence investigation reports and mental health reports before testifying at defendant's Megan's Law hearing.

Defendant did not participate in the assessment process and declined an interview with Dr. Ziv. N.T. 09/30/14, pp. 9-10. Despite defendant's non-participation, Dr. Ziv conducted an evaluation and diagnosed defendant with pedophilia. N.T. 09/30/11, pp. 13-14. *See Commonwealth v. Woods*, 909 A.2d 372 (Pa. Super. 2006) (holding that expert had sufficient information to render informed opinion of defendant's condition). The criteria for the diagnosis of pedophilia include: sexual activity by an individual at least 16 years of age and at least 5 years older than the prepubescent child or children involved, with the children generally being age 13 or younger; the sexual activity occurs over a period of at least six months; and the sexual behavior causes clinically significant distress or impairment in social, occupational or other areas of functioning. Dr. Ziv June 27, 2011 Report, p. 6 (relying on Diagnostic and Statistical Manual IV). In conducting the assessment, Dr. Ziv reviewed the factors set forth in Section 9799.24 of Megan's Law, 42 Pa. C.S. §9799.24, and used those factors to highlight defendant's individual offense pattern. Dr. Ziv noted the following in her report:

I.    In terms of the <u>factors related to the offense,</u>

1)    There is <u>one (1) victim</u> in this case. Mr. Borgos-Leon sexually assaulted the granddaughter of his paramour on multiple occasions when she was between approximately 8

years old until she was 13 years old. [M.S.] reported that he engaged in multiple sexual acts, ranging from vaginal and anal intercourse to fondling. Multiple sexual assaults on a single victim are associated with higher risks of recidivism.

2) It appears that the offender did <u>exceed the means necessary</u> to achieve the offense, he held a knife to her throat. Further, the child was young and unable to defend herself against the offender's sexual misconduct.

3) Related to the <u>nature of sexual contact with the victim(s)</u>, the occurrence of sexual contact with the victim indicates a relationship promoted by the offender toward the victim in part for sexual purposes. The offender's behavior was intentional, deliberate, likely anteceded by sexual thoughts or fantasies, and involved planning and/or risk-taking in order to gratify his sexual impulses. He manifested difficulty controlling his deviant sexual cognitions and behavior as he assaulted the victim regardless or oblivious to the likelihood of apprehension or detection.

4) In terms of <u>relationship to the victim(s)</u>, the offender was the paramour of the victim's grandmother. Offenders who engage in sexual assaults against unrelated persons have higher rearrest and/or reconviction rates than those that offend only against related victims. However both types of offenders may have characteristics that make them likely to reoffend.

5) In terms of the <u>age of the victim(s)</u>, the victim was between 8 and 13 years old and the offender was in his 40's at the time of the assaults. The victim was emotionally and intellectually vulnerable to the perpetrator.

6) The offender did display <u>unusual cruelty</u> during the commission of the crime; he held a knife to her throat. Further, sexual assault upon a child is a cruel act.

7) In terms of <u>mental capacity of the victim(s)</u>, the victim was between approximately 10 years old when the sexual assaults started, and thus she had limited intellectual capacity to understand what was happening to her or defend herself from the offender's sexual aggression.

II. In terms of <u>prior offense history</u>, Mr. Borgos-Leon does not have a history of previous sexual crimes.

III. In terms of the <u>characteristics related to the offender</u>, Mr. Borgos-Leon is currently 51 years old. This puts him at an

> age where there is little statistical information regarding reoffense rates.
>
> Mr. Borgos-Leon has displayed deviant sexual interests as his pathway to sexual offending. This path has been shown in the literature to be most highly associated with recidivism risk.

Dr. Ziv June 27, 2011 Report, pp. 4-5. After consideration of these factors, Dr. Ziv concluded to a reasonable degree of psychological certainty that defendant has a history of deviant sexual interest associated with an increased recidivism risk and that defendant had the mental abnormality or personality disorder of pedophilia. Dr. Ziv concluded to a reasonable degree of psychological certainty that defendant met the criteria of pedophilia, having been convicted of sexual assault of a child between the age of eight (8) and thirteen (13) years of age while he was an adult. N.T. 09/30/11, pp. 13-14.

After concluding that defendant met the criteria of pedophilia, Dr. Ziv further opined that the pedophilia was likely the impetus to defendant's sexual offending. According to Dr. Ziv, pedophilia is a "lifetime condition" that overrides an "individual's emotional, volitional control." N.T. 09/30/11, pp. 14-15. Defendant's actions "indicated that his sexual impulses were compelling and overrode his emotional and volitional control." N.T. 09/30/11, pp. 14-15. Further, defendant "has demonstrated the pathway to sexual offending that has been shown to be associated with recidivism, namely deviant sexual interest in the form of pedophilia." Dr. Ziv June 27, 2011 Report, p. 6; N.T. 09/30/11, p. 15. Consequently, Dr. Ziv concluded that defendant had a personality disorder or mental abnormality that rendered him likely to reoffend.

Dr. Ziv further concluded that defendant was an individual likely to engage in predatory behavior. In making this determination, Dr. Ziv based her observation on the following:

> Mr. Borgos-Leon sexually assaulted an 8-to 13-year old female. When a sexual relationship develops between a child and an adult, it overrides other aspects of the adult/child relationship.

[M.S.] told police that she repeatedly tried to push the offender away. He persisted in sexually assaulting this vulnerable child. During the sexual acts, the offender was promoting the relationship, at least in part, for the purposes of sexual victimization.

Dr. Ziv June 27, 2011 Report, pp. 6-7. In light of these facts, Dr. Ziv concluded to a reasonable degree of psychological certainty that defendant's behavior fell within the statutory definition of predatory. Accordingly, this court did not commit error in finding defendant to be a sexually violent predator.

In challenging his classification as a sexually violent predator, defendant asserts that said finding increased "the prescribed range of penalties" and violated his Sixth Amendment right to have a jury find this fact beyond a reasonable doubt. To the contrary, defendant's sexually violent predator status was not a fact that increased his sentence. Indeed, this court imposed the sentences for each of his convictions within the statutory maximum for each offense. Furthermore, our Superior Court has held that the registration, notification, and counseling requirements of sexually violent predators set forth in Megan's Law "do not constitute punishment." *Commonwealth v. Askew*, 907 A.2d 624, 628 (Pa. Super. 2006). Consequently, there is no merit to defendant's allegation.

Therefore, in light of the foregoing, the judgment of sentence should be AFFIRMED.

BY THE COURT,

Sandy L.V. Byrd,　J.