## Commonwealth *v.* Blauvelt, Appellant.

Argued March 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before WELLS, P. J.

*Thomas A. Walrath,* with him *Harold B. Fink, Jr.,* and *Linton & Walrath,* for appellant.

*John A. Duvall,* District Attorney, with him *William E. Young,* Assistant District Attorney, for appellee.

OPINION BY HIRT, J., April 16, 1958:

Defendant, more than 35 years of age, was convicted on both counts of an indictment charging the common law offense of indecent assault, and of conduct tending to corrupt the morals of Lois Ann Quimby, the young girl involved, then 13 years old. Section 532, added to the Act of June 24, 1939, P. L. 872, by the amendment of June 3, 1953, P. L. 277, 18 PS §4532. Motions in arrest of judgment and for a new trial were refused and the defendant was sentenced on each of the counts.[1]

The defendant operated a garage and automobile body shop on East Second Street in Coudersport. Lois Quimby lived with her father nearby, on the corner of Second and West Streets. In the evening of Sunday, April 7, 1957, between 7:30 and 8:00 Lois left her home to buy some ice cream in the neighborhood. On the way back with her purchase she saw the defendant standing by the door of his shop. Only the office was lighted. She testified that as she was passing his shop he turned off the lights and said: "Come here" and that when she tried to get away "he came out after" her; he seized the back of her coat and pulled her into the garage, closing the door behind him and "dragged" her into the back seat of an automobile inside the shop. She testified that she kept on screaming for help although the defendant said: "Stop it or I'll knock you

---

[1] He was sentenced to imprisonment for 1½ to 3 years on each conviction; the sentences to be served concurrently.

out." In the car defendant removed the girl's coat and her underclothing and took liberties with her person against her will, short however of attempting rape. He released her some time around nine o'clock and on her way home, still carrying the ice cream her disheveled condition was observed by a State police officer. The girl's uncle who went out to look for the girl when she did not return home within a reasonable time testified that he saw her crossing the street, that she then was crying and that "her hair was all mussed up". On arriving home she reported the assault to her father. He testified that she was "pretty badly mussed up" and that her lip was bruised and swollen. She however had no recollection of the defendant striking her. The father immediately went to the defendant's garage with a flashlight and on the floor of the black Hudson, in which the girl said she had been assaulted, he found a missing button which had been pulled from her dress. The defendant denied seeing the girl that evening, but at the same time begged her father not to say anything about the matter.

Contrary to appellant's contention the verdict was not against the weight of the evidence. The weight to be given the testimony in this case was for the jury and not for either the trial court or for us. Cf. *Commonwealth v. Attarian*, 129 Pa. Superior Ct. 31, 194 A. 776. And the record belies the contention of a denial of due process. Moreover the trial court did not err in its charge on the second count of the indictment. We need not discuss that contention under the circumstances, since the defendant did not request additional instructions (*Commonwealth v. Heatter*, 177 Pa. Superior Ct. 374, 111 A. 2d 371) and this, especially, since at the end of the charge the trial judge inquired "Whether there are any further matters of evidence or

principles of law that you wish reviewed" and defendant's counsel replied: "A very complete and accurate summary." The constitutionality of the 1953 amendment of The Penal Code, supra, on which the second count was based, was not raised in the court below. We however in *Com. v. Randall et al.*, 183 Pa. Superior Ct. 603, 133 A. 2d 276, found the Act to be constitutional and the ruling in that case would dispose of that question adversely to the defendant even if it had been properly raised.

However, there was fundamental error in the trial of defendant on the charge of indecent assault. The error consisted in inconsistent rulings of the court with respect to prior solicitations of defendant alleged to have been made to him by Lois Quimby. Initially the court ruled that defense counsel would be permitted to prove solicitation by the girl who frequently visited a girl in the defendant's office where she worked. At least three of defendant's witnesses, who saw her on the premises, when asked if they had ever heard the girl solicit the defendant, answered: "No." (Record 65a, 69a and 79a). One witness, however (at 97a), the girl who was employed in the office said that on one occasion Lois Quimby did solicit the defendant and in response to the question: "How did she do that?" she testified that Lois said: " 'Give me a little.' " without elaborating as to what, if anything, was said prior thereto by Lois or the defendant. This alleged statement would amount to a solicitation by innuendo only, in any event, dependent upon its context. The court when the Commonwealth objected and moved that the testimony be stricken ruled (at 97a) as follows: "Yes, but I said I would permit you to ask whether there was solicitation. I agree that the conversation is not proper and the jury is instructed to disregard it, it is to be stricken." Later in the trial (record at 121a) follow-

ing testimony of another witness who stated that Lois came to defendant's place of business frequently, the defendant took the stand in his own defense and to the question: "During these times in which she would come around to your place of business, did she ever solicit you?" the defendant replied: "Yes, she did." The court sustained the Commonwealth's objection to this testimony in stating: "The answer should be stricken and the jury is instructed to disregard it." This was the defendant's own self-serving statement but nevertheless he was entitled to the benefit of it, for what it was worth, and there was error in excluding it.

The district attorney attempted in this appeal to justify the above inconsistent rulings by analogy to cases involving the charge of statutory rape. It is at once obvious that analogy fails, for these reasons: to convict on a charge of statutory rape, whether the young girl consented or not is immaterial. Section 721 of The Penal Code, supra, specifically provides that the offense consists in the carnal knowledge of a woman child under the age of sixteen years "with or without her consent." The crime of statutory rape differs from the common law offense of indecent assault, here involved, in other respects: proof of bad reputation of the girl may reduce the offense of statutory rape to fornication; but specific acts of misconduct are inadmissible, in a criminal action on that charge, to prove a girl's bad reputation. *Commonwealth v. Sutton*, 171 Pa. Superior Ct. 105, 90 A. 2d 264. The term "good repute" in the language of §721, supra, means the reputation of the girl for chastity, i.e., what she is reputed to be, in the community in which she lives, not what she really is. For that reason specific acts are not admissible to show her bad repute. *Commonwealth v. San Juan et al.*, 129 Pa. Su-

perior Ct. 179, 195 A. 433; *Commonwealth v. Wink,* 170 Pa. Superior Ct. 96, 84 A. 2d 398. On the other hand the absence of consent is an essential element of the offense of indecent assault. A girl with a bad reputation, or even a girl actually bad, need not submit to indecent liberties with her person merely because she is bad. Good or bad, the question of her consent to the advances is controlling. In this case since Lois Quimby was over 13 she unquestionably was above the common law age of consent. *Commonwealth v. Balles,* 163 Pa. Superior Ct. 467, 62 A. 2d 91. Cf. *Commonwealth v. Miller,* 80 Pa. Superior Ct. 309, 312. The elements of indecent assault are discussed in *Com. of Penna. v. DeGrange,* 97 Pa. Superior Ct. 181. And the absolute necessity of absence of consent is emphasized in *Commonwealth v. Carpenter,* 172 Pa. Superior Ct. 271, 94 A. 2d 74 and *Commonwealth v. Tuck,* 169 Pa. Superior Ct. 35, 82 A. 2d 288.

The burden was on the Commonwealth to prove that the alleged assault complained of was committed by the defendant without the consent of Lois Quimby. In this case therefore testimony of her prior acts in soliciting the defendant were relevant on the question whether she consented to the liberties taken by the defendant on this occasion.

There appear to be no Pennsylvania cases to the effect that proof of prior solicitations by the girl is admissible on the issue of consent essential to the Commonwealth's proofs. But there are authorities elsewhere to the effect that former familiarities between the girl and the accused may be shown on a charge of indecent assault. 4 Am. Jur., Assault and Battery, §105. Cf. Wharton Criminal Evidence, 12th Ed., §229; 44 Am. Jur., Rape, §76. The fundamental error from the exclusion of the testimony however goes only to the charge of indecent assault.

The question of consent is neither relevant nor material on a charge of corrupting the morals of a minor under §4532 of The Penal Code, supra. The section of the Code forbids any act by an adult which tends to or actually does corrupt the morals of a child. The terms of the proscription are clear; no adult may with impunity engage in conduct with a minor which has the effect of corrupting the morals of the child; and it could not be argued persuasively that the acts charged here did not fall within the category of conduct which the law forbids. Whether the child consented to, or even solicited the advances which affected her morals, is of no moment. While under the common law a child of the age of Lois Quimby was considered of sufficient capacity to consent to an indecent assault, an enlightened legislature of this Commonwealth has recognized that the inexperience of youth prevent intelligent judgment in matters of morality. It has therefore removed children from the area of responsibility for their own fault within the purview of the above section of The Penal Code and has placed the guardianship of their morality upon adults. Thus, any depraved adult who participates in the corruption of children must do so at his own risk; and the fact that he may have succumbed to the invitation of a female of tender years is more an aggravation than an excuse.

Since the question of consent was of no moment on the trial of the charge relating to corruption of morals, the exclusion of the evidence relating to previous acts of solicitation had no prejudicial effect on defendant in that case and the judgment of sentence on his conviction of that offense cannot be disturbed.

The sentence for Indecent Assault is set aside with the award of a new trial.

Judgment of sentence on the charge of a violation of §4532 of The Penal Code is affirmed and appellant is ordered to appear in the court below at such time as he may be there called and that he be by that court committed until he shall have complied with his sentence or any part of it which had not been served at the time this appeal was made a supersedeas.

Judge WRIGHT would affirm the conviction on both counts of the indictment.