414 A.2d 1026

**COMMONWEALTH of Pennsylvania**

v.

**Harold Paul MUMMA, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 22, 1980.

Decided May 30, 1980.

**6.** Of course, our ruling is without prejudice to Drake to collaterally attack the judgment and, thereby, raise the issue.

548

Thomas G. Klingensmith, Lancaster, for appellant.

Richard A. Sheetz, Jr., Asst. Dist. Atty., Lancaster, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case presents a question of whether the Commonwealth introduced sufficient evidence at appellant's trial to satisfy the requirements of Pennsylvania's indecent assault statute, 18 Pa.C.S. § 3126. Appellant, eighteen year old Harold Mumma, claims he did not know his contact with the victim, Mark Belesfield, was offensive and did not know the victim was unaware that an indecent contact occurred. We conclude that sufficient evidence appears of record to sustain the conviction. Accordingly, we affirm.[1]

On September 22, 1974, appellant went to the Belesfield home, ostensibly for the purpose of obtaining eight-year-old Timothy Belesfield's assistance with the painting of appellant's car. Timothy's twelve-year old brother Mark answered the door and asked if he could help as well. Appellant agreed and the two boys accompanied appellant to his house. When they arrived appellant ran a short errand, then informed the boys that the possibility of rain precluded their painting the car. As an alternative, appellant invited the boys to join his "club."

1. This case was reassigned to this writer on March 13, 1980.

Mark accepted the invitation and followed appellant into the house. They went upstairs to appellant's room, the "club" office, where appellant gave Mark a card to complete. Mark signed the card and appellant placed it in a file box. Appellant indicated that there were other members of the "club" and that the "club's" purpose was teaching math and other subjects to prisoners in the Lancaster prison.

Appellant next told Mark that "club" rules required every applicant to undergo a physical "examination." Appellant instructed Mark to undress and lie on the bed under a blanket. Next appellant asked Mark to stand and turn around, whereupon appellant "brushed" Mark's genitals four or five times.[2] Mark was also instructed to sit on the bed with the blanket covering his head and body. During this "examination," appellant put his head under the blanket to view Mark's nude body. After the "examination," Mark dressed, went out on a balcony, and spoke with Timothy. While Timothy entered the house to join the "club," appellant ushered Mark up to the attic for additional "testing."

In the attic another "club" officer, Ronny Moser, gave Mark written tests on mathematics and various other subjects.[3] Moser then told Mark to remove his trousers and stand a few feet away. Moser extinguished the room lights and illuminated Mark's body with a flashlight. Again, Mark was told to turn around during the "examination." While Moser was examining Mark, appellant subjected Timothy to the same induction procedure but without touching Timothy's genitals.[4]

**2.** Appellant does not argue that the brushing of the victim's genitals was accidental. Indeed, the number of times contact occurred would belie any claim of accident.

**3.** Although applicant suggested that other "club" members had undergone the physical examination requirement, only appellant and Ronny Moser were members of this "club." Appellant and Moser assigned ranks, in the style of military service, to each "club" member. Appellant was a General, Moser an Assistant General and the Belesfield boys were assigned lower ranks once inducted.

**4.** Once disrobed, Timothy was told to sit on appellant's lap. The "examination" consisted of appellant's "looking" at the boy.

After Moser completed the examination of Mark, appellant escorted Timothy to the attic. There appellant and Moser finished Timothy's "examination" by shining the flashlight on him and asking him to turn around while the room was darkened. Finally, Mark indicated that the boys were expected at home. Moser told the boys that "if you come back, we will try to scrape up money for you out of the bank, if you remember the rules." Moser also added, "if you disobey the rules, you have stand in the corner for five minutes and with your clothes off." Neither Mark nor Timothy ever returned to appellant's house to participate in "club" activities.

A few months later, appellant asked Mark if he "wanted to sign out of the club." Mark indicated his willingness, but didn't have time that day. Three or four days later, when driving past Mark on the street, appellant stopped his car and again asked whether Mark wished to sign out. At trial Mark stated that "[appellant] had a file in his hand and he said we have to give you another physical . . . ." Mark accompanied appellant to the house and again went to the "club" office. This time the physical was interrupted when appellant's mother knocked on the door to inform Mark that a friend was waiting for him. Mark left and reported the incident to the police.

Soon after Mark reported the incident, police obtained a warrant for the search of appellant's home. There police seized the file box and the cards it contained along with some other "club" records. In the box police discovered two file cards bearing the names of Mark and Timothy Belesfield. Those cards, identified by each boy as the cards they signed on September 22, were introduced into evidence by the Commonwealth.[5]

A jury convicted appellant of indecent assault and corruption of minors.[6] Appellant received concurrent sentences of

5. At trial, appellant denied that physical examinations took place in the "club" office. He implicated Ronny Moser as the "club" officer in charge of examinations. Appellant claimed that his duty was only the prescreening of applicants.

6. 18 Pa.C.S. § 3125(a).

two to twelve months imprisonment on each charge. On appeal, the Superior Court affirmed. We granted allowance of appeal.

Appellant challenges the sufficiency of the evidence supporting his conviction for indecent assault under 18 Pa.C.S. § 3126. Section 3126, in relevant part, defines indecent assault as follows:

"A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:

(1) he knows that the contact is offensive to the other person; [or]

(2) . . .

(3) he knows that the other person is unaware that an indecent contact is being committed;"[7]

This Court has not previously considered the provisions of the statute. We must determine whether the Commonwealth has established by the evidence presented that appellant knew his conduct offended the victim, or that appellant knew the victim was unaware an indecent contact occurred.[8]

■ When interpreting a statute, we are guided by the plain meaning rule of construction. 1 Pa.C.S. § 1903. We therefore conclude that the Legislature intended that the Commonwealth, when seeking a conviction for indecent assault, prove the actor knew his contact would be offensive to the victim. So too, subsection (3) requires knowledge that the victim is unaware of the indecent contact.

Section 3126 is derived from section 213.4 of the 1962 Model Penal Code. An earlier draft of that provision made

**7.** Indecent contact is defined by statute as:

"Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person."

18 Pa.C.S. § 3101.

**8.** The trial court charged on both § 3126(1) and § 3126(3). The jury returned a general verdict. We are satisfied that the Commonwealth's evidence is sufficient to support a verdict under both subsections.

indecent contact punishable in any instance where the prosecution could show absence of consent of the victim. See section 207.6, Tentative Draft No. 4 (1955). The American Law Institute rejected this absence of consent standard because it "seem[ed] too strict a standard of criminality, considering the frequency with which tentative sexual advances are made without explicit assurance of consent." The provisions of section 3126(1) reflect this concern for possible prosecution of "[a]cts commonly expressive of familial or friendly affection" which are "as consistent with the overfamiliar friendship as with lust." Comment, section 207.6, Tentative Draft No. 4 (1955). See also *Commonwealth v. Ruehling*, 232 Pa.Super. 378, 334 A.2d 702 (1975); *Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974).[9]

■ The scope of our review, of course, is limited. Resolution of factual issues is solely within the province of the jury and an appellate court will not disturb the jury's findings where there is support in the record for the verdict. *Commonwealth v. Rowe*, 459 Pa. 163, 169, 327 A.2d 358, 362 (1974); *Commonwealth v. Williams*, 450 Pa. 158, 162, 299 A.2d 643, 645 (1973); *Commonwealth v. Chermansky*, 430 Pa. 170, 174, 242 A.2d 237, 240 (1968). Viewing, as we must, all of the evidence in light most favorable to the Commonwealth, *Commonwealth v. Santiago*, 476 Pa. 340, 382 A.2d 1200 (1978); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Lee*, 450 Pa. 152, 154, 299 A.2d 640, 641 (1973), the jury could reasonably conclude on this record that appellant knew the contact would be offensive to the victim and also knew the victim was unaware that the contact was of an offensive nature.

**9.** Section 3126(1) was recently amended by the Legislature. It now provides:
> "A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty of indecent assault, a misdemeanor of the second degree, if:
> (1) He does so without the consent of the other person;"

Because appellant's conduct occurred before this amendment, we need not decide any question regarding this amended statute.

Appellant devised the elaborate club membership charade as a justification for the contacts. The trappings of this charade included membership application cards and various written examinations. At one point appellant misrepresented the purpose of the "club" to the victim. Additionally, the initial inducement for the victim to come to appellant's house was to paint a car, not for initiation into appellant's "club." From this evidence the jury could find that appellant attempted to camouflage his true purpose for inviting the victim to his bedroom. It was permissible for the jury to conclude that appellant's knowledge of the necessity for disguising his true purpose was equivalent to knowing that the victim would, under less disguised circumstances, be offended by the contact.

Likewise, the jury could conclude that, by way of the elaborate scheme, appellant deceived the victim, resulting in the victim's lack of awareness that an indecent contact was committed. Appellant was several years older than the victim. He first induced the victim into his house by inviting membership in the "club." Once in the house appellant suggested that the physical was an ordinary requirement of all candidates. He represented that several others had undergone this threshold examination. At the time appellant touched the victim's genitals, the charade may have convinced Mark that this contact was merely another aspect of a prescreening of members by physical examination. Thus, the jury could properly find appellant guilty under the provisions of § 3126(3).

■ Appellant also challenges sufficiency on the grounds of the Commonwealth's failure to present sufficient corroborating evidence to support the testimony of the victim. Here, however, testimony of both Mark and Timothy Belesfield as well as physical evidence was presented to the jury. While the Commonwealth rests its charge of indecent assault upon the touching of Mark, the testimony of Timothy corroborates Mark's relation of the incident. Both boys were asked to joint the "club," both were subjected to the "physical", albeit separately, and both were taken to the

attic where Ronny Moser visually inspected their nude bodies by spotlighting each child with a flashlight after darkening the room. Finally, each child reported that appellant filled out a card which they initialled. Police seized those initialled cards from appellant's room. In light of this testimony and physical evidence, the Commonwealth has sufficiently negated any allegation that the victim may have concocted this charge for reasons of spite.[10] See *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975) (testimony sufficiently corroborated by physical evidence).

■ Finally, appellant challenges the sufficiency of the evidence to support a conviction on the charge of corrupting the morals of a minor. Appellant argues that the Commonwealth fails to show actual corruption of the victim's morals, or conduct "tending to produce, encourage or continue delinquent conduct of the child." We disagree. The Commonwealth need not prove that the minor's morals were actually corrupted. *Commonwealth v. Davison*, 243 Pa.Super. 12, 14 n.1, 364 A.2d 425, 426 n.1 (1976). Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant "tends to corrupt" the minor's morals. 18 Pa.C.S. § 3125(a). The statute speaks to conduct "toward a child in an unlimited variety of ways which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct." *Commonwealth v. Zellner*, —— Pa.Super. ——, ——, 407 A.2d 436, 439 (1979); *Commonwealth v. White*, 232 Pa.Super. 176, 183, 335 A.2d 436, 439 (1975) (quoting *Commonwealth v. Meszaros*, 194 Pa.Super. 462, 168 A.2d 781 (1961)). We conclude that appellant's conduct falls within the statutory proscription.

10. We fail to understand appellant's reliance upon *Douglas v. United States*, 386 A.2d 289 (D.C.1978) in arguing insufficient corroboration. The court in that case found sufficient corroboration where the witness merely remembered the number of the house and some details of the room in which he had been molested. Here, the Commonwealth presented the corroborating testimony of the victim's younger brother, substantially more evidence than that held sufficient in *Douglas*. See also, *Commonwealth v. Stallard*, 259 Pa.Super. 109, 393 A.2d 740 (1978).

The Commonwealth has presented evidence sufficient to enable the jury to conclude that appellant's conduct constituted indecent assault and corrupting the morals of a minor. Accordingly, we affirm the judgments of sentence.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

The introductory clause of Section 3126 coupled with subsection (1) sets forth the traditional crime of indecent assault. This crime traditionally required an assault and battery, including the elements of force and absence of consent. The essence of the offense was the taking of indecent liberties against the will of the victim.

The majority correctly states the concern of the drafters in enacting subsection (1) of Section 3126.

Section 3126 is derived from section 213.4 of the 1962 Model Penal Code. An earlier draft of that provision made indecent contact punishable in any instance where the prosecution could show absence of consent of the victim. See section 207.6, Tentative Draft No. 4 (1955). The American Law Institute rejected this absence of consent standard because it "seem[ed] too strict a standard of criminality, considering the frequency with which tentative sexual advances are made without explicit assurance of consent." The provisions of section 3126(1) reflect this concern for possible prosecution of "[a]cts commonly expressive of familial or friendly affection" which are "as consistent with the overfamiliar friendship as with lust." Comment, section 207.6, Tentative Draft No. 4 (1955). See also *Commonwealth v. Reuhling*, 232 Pa.Super. 378, 334 A.2d 702 (1975); *Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974).

Although recognizing the potential problem raised in the area the majority has ignored the intended solution. For a conviction to stand under the instant provision it must be shown that not only was the contact nonconsensual but also that the actor was willing to accomplish the offensive touch-

ing over the objection of the offended party. The majority's interpretation of subsection (1), which attaches criminal responsibility for sexual contact solely upon a finding of an absence of consent, fails to recognize the significance of the additional requirement of a showing of the willingness of the actor to persist in the conduct against the will of the victim. This omission permits the "too strict standard of criminality" which the drafters of the Model Code were intending to avoid. It also represents a significant departure from prior law which required this additional element for the offense.[1]

The deficiency in the Commonwealth's evidence is the failure to show that appellant intended to accomplish the acts against the will of the victim. To the contrary, all of the testimony pointed to his attempts to secure the consent of the victim to the acts. There were no threats or coercion; there was no force employed; the victim complied without protest or complaint. The Commonwealth's evidence tended to negate rather than to establish the element of force. Instead of pointing to a willingness to act against the will of the victim, the evidence pointed to a belief on the part of the actor, either that he had so disguised the nature of the conduct that the victim was not aware of its offensiveness or that he had induced the victim to willingly participate. In either event, appellant evidenced no intent to act against the will of the victim. To the contrary the appellant proceeded upon the basis that he had secured the victim's

1. Whether considered as a distinct common law crime, 33 Temp.L.Q. 425 (1960), or as a species of the statutory crime of assault as defined in the 1939 Penal Code, 18 P.S. § 4708, indecent assault comprehends an assault and battery, *Commonwealth v. Gregory*, 132 Pa.Super. 507, 1 A.2d 501 (1938) including the elements of force and absence of consent. *Commonwealth v. Shrodes*, 354 Pa. 70, 74, 46 A.2d 483 (1946); *Commonwealth v. Carpenter*, 172 Pa.Super. 271, 94 A.2d 74 (1953). Thus the prior statement of the elements of the offense, i. e., the taking of indecent liberties against the will of the victim—is still viable under section 3126 as it was written at the time of this incident. *Commonwealth v. Shrodes, supra; Commonwealth v. Blauvelt*, 186 Pa.Super. 66, 140 A.2d 463 (1958); *Commonwealth ex rel. Robinson v. Maroney*, 175 Pa.Super. 529, 107 A.2d 188 (1954); *Commonwealth v. Carpenter, supra; Commonwealth v. Gregory, supra*.

consent. Thus a conviction under the theory of subsection (1) should not be sustained.

A long recognized exception to the requirement of an intent to act against the will of the victim is where the actor attempts to deceive the victim of the true nature of the conduct. *See Commonwealth v. Gregory*, 132 Pa.Super. at 515–16, 1 A.2d 501. This element in such cases was satisfied by the use of fraud and artifice and any consent secured thereby was invalidated. *Id.* This exception to the basic rule requiring an intent to overcome the victim's will has been codified in subsection (3) of Section 3126. I agree with the majority that the evidence supports a conviction under the fraud and deceit exception provided for in subsection (3). The Commonwealth presented evidence of the use of a ruse by appellant—a physical examination and initiation to join a club—to gain the victim's willing participation. This testimony coupled with the disparity of age and experience between appellant and the victim would support the finding that these acts were accomplished because "the other person [was] unaware that an indecent contact [was] being committed."

However, the jury was allowed to return the guilty verdict under the theory of subsection (1) as well as subsection (3). Since a general verdict was rendered, we have no way of discerning which theory was accepted by the jury as the basis for its result. For the verdict to stand, under these circumstances, it is therefore necessary to find that the record would support the finding under either theory.[2] As

---

**2.** This principle is a basic axiom of our jurisprudence although our cases have only referred to it by implication. In *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977), we were presented with a situation in which the jury could have found the defendant guilty of murder in the first degree under either the theory of felony murder or a willful, deliberate and premeditated murder. "Since there is no way of knowing on which theory the jury proceeded, we must consider appellant's contention that the robbery offense, if it lay behind the murder verdict, merged into the offense of murder and is not separately punishable." *Id.*, 471 Pa. at 502, 370 A.2d 718. *See also Commonwealth v. Thomas*, 448 Pa. 42, 48, 292 A.2d 352 (1972) (Court required to determine sufficiency of the evidence of rape where defendant was charged with a premeditated or a felony mur-

the verdict rendered was dependent upon the sufficiency of the evidence to sustain a finding under either section of 3126 the verdict of guilty on this indictment should not be permitted to stand.

I therefore respectfully dissent.

der); *Commonwealth v. Mount*, 416 Pa. 343, 345–47 & n.2, 205 A.2d 924 (1965) (although defendant apparently conceded guilt as to premeditated murder, he disputed evidence of rape, and Court was compelled to determine whether he could be convicted of felony murder). Here, as in *Sparrow*, we do not know on which theory—either 18 Pa.C.S.A. § 3126(1) or (3)—the jury proceeded, forcing consideration as to the sufficiency of the evidence to sustain convictions under both subsections.