J-S33001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| R.A.S., | |
| Appellant | No. 1100 MDA 2016 |

Appeal from the Judgment of Sentence Entered July 21, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001660-2014

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED JUNE 13, 2017**

R.A.S. ("Appellant") appeals from the judgment of sentence of a lengthy term of incarceration and probation, imposed after he was convicted of rape of a child, 18 Pa.C.S. § 3121(c), involuntary deviate sexual intercourse with a child ("IDSI"), 18 Pa.C.S. § 3123(b), unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1), indecent assault with a person less than 13 years of age, 18 Pa.C.S. § 3126(a)(7), simple assault, 18 Pa.C.S. § 2701(a)(1), two counts of endangering welfare of children ("EWOC"), 18 Pa.C.S. § 4304(a)(1), and three counts of corruption of minors ("COM"), 18 Pa.C.S. § 6301(a)(1)(i)-(ii).[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that the trial court claims that Appellant's aggregate term of incarceration is 196 to 396 months.  However, our review of the record
*(Footnote Continued Next Page)*

The trial court summarized the procedural and factual background of this case as follows:

**PROCEDURAL HISTORY**

On March 11, 2015, following a nonjury trial, [Appellant] was found guilty of Rape of a Child, [IDSI], Unlawful Contact with a Minor, Indecent Assault, [EWOC]—Parent or Guardian, two count[s], [COM], three counts[,] and Simple Assault. [Appellant] was sentenced on July 21, 2015[,] after a [Sexually Violent] Predator determination. [Appellant] had a prior record score of 1 and an offense gravity score of 14. [Appellant] was sentenced … [and he] filed Post-Sentence Motions on July 31, 2015[,] requesting a new trial, requesting a modification of the sentence and requesting a reconsideration of the Sexually Violent Predator decision. The Commonwealth responded to the Motions and argument was heard on the issues.

**FACTS OF THE CASE**

[Appellant] was charged with Rape of a Child, [IDSI], Unlawful Contact with Minor, two counts, Indecent Assault, two counts, [EWOC], two counts, [COM], three counts, and Simple Assault, two counts, following an initial investigation of alleged physical and sexual abuse of a male juvenile, [J.M.P.], which developed into charges of multiple victims. At trial[,] [J.M.P.] was 13 years of age, but the reported abuse occurred when [J.M.P.] was between the ages of 6 and 11, while living in Lower Frankford Township, Cumberland County. In review, [J.M.P.] testified that [Appellant], his stepfather, sexually and physically assaulted him on repeated occasions. Specifically, [Appellant] would beat him with a belt, ping-pong paddle[,] and curtain wand. [J.M.P.] conveyed that [Appellant] would pull down [J.M.P.'s] pants as well as [Appellant's] own pants and touch [J.M.P.'s] private part … with [Appellant's] hand and vice versa. [Appellant] told

*(Footnote Continued)* ————————

indicates that Appellant's aggregate term of incarceration is 178 to 360 months.

[J.M.P.] that he would not get in trouble and not to tell anybody.

[J.M.P.] testified that between the ages of 6 and 9, [Appellant] told [J.M.P.] to strip so [Appellant] could put "stuff" up [J.M.P.'s] "butt" more than once. This "stuff" included a straw, charger wire[,] and a pencil. [J.M.P.] reported that [Appellant] put his penis in [J.M.P.'s] butt more than once. Further, when about 9 or 10[,] [J.M.P.] stated [Appellant] used his phone to take pictures of [J.M.P.] and his brother while they were leaning naked together. [J.M.P.] also related that [Appellant] put his penis into [J.M.P.'s] mouth on more than one occasion.

[J.M.P.'s] stepbrother, [D.T.M.], age 14, testified that [Appellant's] actions were mostly directed at [J.M.P]. [D.T.M.] corroborated some of the physical abuse that occurred between his ages of 9 and 12 to him and his brothers. [D.T.M.] related that [Appellant] was both verbally and physically abusive, which included the children being forced outside of the residence for many hours at a time, without food or water, which was followed by threats and reprisals. This occurred so often that [D.T.M.] would hide cups outside so they could get drinks of water from the hose. An incident where [D.T.M.] was struck in the face that caused a nose bleed was corroborated by a maternal aunt who came to the residence and saw [D.T.M.] on the floor with a bloody nose and [Appellant] in a fight stance over [D.T.M].

[J.M.P.'s] youngest brother, [R.A.S.], age 10, confirmed the physical abuse that occurred to him between his ages of 5 and 8; specifically[,] that the boys were physically treated differently and generally recall[ed] being struck.

Trial Court Opinion (TCO), 6/30/2016, at 1-3 (original brackets omitted).[2]

_____

[2] Instead of issuing a designated Pa.R.A.P. 1925(a) opinion, the trial court "note[d] that the reason for the Order already appear of record and an Opinion in support of the Order has previously been issued." **See** Trial Court Order, 9/23/2016, at 1. Our review of the record suggests that the trial court must be referring to its June 30, 2016 Opinion and Order, which disposed of Appellant's post-trial motions and considered issues raised in
*(Footnote Continued Next Page)*

J-S33001-17

Following the nonjury trial and sentencing, the trial court denied Appellant's post-trial motions on June 30, 2016. On July 7, 2016, Appellant timely filed a notice of appeal and subsequently timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3]

On appeal, Appellant raises a single issue for our review:

I. Did the court err when it denied [Appellant's] motion for judgment of acquittal where the Commonwealth's evidence was insufficient to support [Appellant's] convictions?

Appellant's Brief at 12 (unnecessary capitalization and emphasis omitted). Although this statement of the issue suggests that Appellant challenges the sufficiency of the evidence for *all* of his convictions on appeal, Appellant goes on to "concede[] that the Commonwealth presented sufficient evidence with regard to the charges of [EWOC] with regard to [D.T.M.] and [J.M.P.] …

*(Footnote Continued)* ———————

Appellant's subsequent Rule 1925(b) statement. *See also* Pa.R.A.P. 1925(a)(1) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order….").

[3] In its July 18, 2016 order directing Appellant to file a concise statement of matters complained of on appeal, the trial court advised Appellant that "[a]ny issues not properly included in the statement … shall be deemed waived." *See* Trial Court Order, 7/18/2016, at 1; *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation ... therefore, we look first to the language of that order.") (citations omitted; brackets in original).

- 4 -

and the charge of Simple Assault with regard to [D.T.M.]...." Appellant's Brief at 18 n.1. Therefore, he claims that the evidence was only insufficient to sustain his convictions of rape, IDSI, unlawful contact with a minor, indecent assault and COM as to J.M.P., and COM as to R.A.S. *See id.* at 18. As such, we limit our review to those convictions.

Before examining Appellant's sufficiency argument, we must initially determine whether Appellant has waived it. According to the Commonwealth, Appellant's "sufficiency of the evidence argument sounds more in weight of the evidence. If considered for sufficiency, his claim is waived for failure to raise it with specificity in his 1925(b) statement." Commonwealth's Brief at 8 (citations and footnote omitted). We agree.

In his Rule 1925(b) statement, Appellant raised the following issue with respect to the sufficiency of the evidence to support his convictions:

> The trial court erred in denying [Appellant's] motion for judgment of acquittal based upon insufficient evidence of the finding of guilt in this case. Specifically, [Appellant] avers that the evidence presented at the time of trial by the Commonwealth was insufficient to support a guilty verdict on any of the charges. Specifically[,] the testimony was so varied and differing among the Commonwealth witnesses in this case that no reasonable finder of fact could find the Commonwealth presented evidence beyond a reasonable doubt of any of the sexual offenses charged. In addition[,] there was absolutely no corroborating physical, medical or testimonial evidence of any sexual misconduct by [Appellant] towards any of the children in this case. In addition, the evidence was insufficient to sustain guilty verdicts for [EWOC] in this matter where the allegations were alleged physical abuse and locking the children out of the house during the day. Further[,] the court found [Appellant] not guilty of the only count of simple assault charged in this case yet the Commonwealth argued uncharged allegations of physical abuse to sustain the [EWOC] and [COM] convictions.

- 5 -

Appellant's Rule 1925(b) Statement, 8/8/2016, at 1-2.[4]

It is well-established that "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where … the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (citations omitted).

Here, Appellant fails to identify which element(s) he challenges of the multiple offenses for which he was convicted. Accordingly, we conclude that Appellant has waived any issues relating to the sufficiency of the evidence to support his convictions.

Further, even if we did not deem his sufficiency challenges waived for lack of specificity, we would still determine them to be meritless. We apply the following standard of review when evaluating sufficiency claims:

> The standard we apply in reviewing sufficiency of the evidence is whether in viewing all the evidence admitted at trial in light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Any doubts concerning an appellant's guilt are to be resolved by the trier of fact unless the evidence was so weak and inconclusive that no probability of fact could be drawn

---

[4] Curiously, Appellant does not challenge the sufficiency of the evidence underlying his convictions for EWOC in his brief, despite paying the most attention to this issue in his Rule 1925(b) statement.

therefrom. The trier of fact while passing upon credibility of witnesses ... is free to believe all, part or none of the evidence. Additionally, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Garland*, 63 A.3d at 344-45 (internal citations, quotations, and brackets omitted).

At the outset, as in his Rule 1925(b) statement, Appellant does not assert which specific statutory elements the Commonwealth failed to prove, let alone reference the applicable statutes underlying his convictions in his brief. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding waiver, in part, where the appellant "does not set forth the elements of the crimes he was convicted of and does not argue which specific elements were not met"). Despite this lack of specificity and context, we attempt to individually address each of the convictions Appellant contests in his brief.

First, Appellant claims that the evidence was insufficient to sustain his conviction of rape of a child as to J.M.P. The applicable statute states, in pertinent part, the following:

> **(c) Rape of a child.--**A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S. § 3121(c). Further, sexual intercourse "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. J.M.P. – who was thirteen years old at the time of trial – testified at trial that

- 7 -

Appellant began sexually abusing him when he was six years old. N.T. Trial, 1/21/2015, at 37, 54. For example, J.M.P. described the following sexual abuse at trial:

> [The Commonwealth]: What else did he use on his body to touch you?
>
> [J.M.P.]: His butt.
>
> [The Commonwealth]: His butt?
>
> [J.M.P.]: And like he would make me -- he put my penis in it and he did the same to me.
>
>            ***
>
> [The Commonwealth]: When [Appellant] would make you touch his butt, did your penis stay on the outside, go inside, or do something else?
>
> [J.M.P.]: Like, it's kind of like both.
>
> [The Commonwealth]: And when [Appellant] would do what you said is the same to you, would his penis go inside, outside, or something else of your butt?
>
> [J.M.P.]: Inside.

*Id.* at 57, 58. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we would determine that this testimony supports that Appellant engaged in sexual intercourse with a person less than 13 years of age. Thus, we would deem the evidence sufficient to enable the trial court to find every element of rape of a child beyond reasonable doubt.

Second, Appellant contests the sufficiency of the evidence with respect to his conviction of IDSI with J.M.P. This statute provides, in relevant part, the following:

**(b) Involuntary deviate sexual intercourse with a child.--**A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S. § 3123(b). Further, deviate sexual intercourse is defined as "[s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3101. Here, J.M.P. testified to the following:

[The Commonwealth]: [] Other than using parts of his body, did [Appellant] ever touch you sexually with something else?

[J.M.P.]: Yes.

[The Commonwealth]: What?

[J.M.P.]: Like he would shove stuff up my butt.

[The Commonwealth]: What kind of stuff?

[J.M.P.]: Like pencils, you know, those little juice packs with the straws.

[The Commonwealth]: Okay.

[J.M.P.]: And like charger wires like the front that clicks into the phone.

N.T. Trial, 1/21/2015, at 61. In light of this testimony, we would also consider the evidence adduced at trial sufficient to support Appellant's conviction of IDSI with a child.

Third, Appellant disputes the sufficiency of the evidence to convict him of unlawful contact with a minor as to J.M.P. Specifically, he states that

"[n]o evidence was presented that [Appellant] engaged in any communication with [J.M.P.] for the purpose of the sexual contact." Appellant's Brief at 24 (citation omitted). The relevant portion of the applicable statute states:

> **(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1). By way of example, this Court has concluded that there was sufficient evidence that an appellant had unlawful contact with a minor where it was "reasonable to infer that [the a]ppellant directed the victim, either verbally or nonverbally, to unclothe below the waist and to assume [a] pose[.]" *See Commonwealth v. Velez*, 51 A.3d 260, 267 (Pa. Super. 2012). In contrast, we have determined that there was insufficient evidence to sustain a conviction for unlawful contact where the appellant "engaged in a routine pattern of abuse, whereby he would enter [the victim's] room at night, while she was sleeping, and grope her chest and buttocks" and there was no evidence that the appellant would "say anything, or communicate with [the victim] to assume any certain position, or to submit to any given act...." *Commonwealth v. Leatherby*, 116 A.3d 73, 79-80 (Pa. Super. 2015).

In the case *sub judice*, J.M.P. testified that Appellant "told [him] to take [his] clothes off[,]" and "after like [Appellant] was done [touching J.M.P.], he used to threaten [J.M.P.] and tell [him] not to tell anybody or [J.M.P.] would be in trouble and it would be [his] fault, too, because [J.M.P.'s] the one that did it, too." N.T. Trial, 1/21/2015, at 55, 56. Therefore, the evidence adduced at trial would establish that Appellant communicated with J.M.P. for the purpose of engaging in sexual contact.

Fourth, Appellant claims there was insufficient evidence to convict him of indecent assault as to J.M.P. The applicable statute states:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> ***
>
> (7) the complainant is less than 13 years of age….

18 Pa.C.S. § 3126(a)(7). Indecent contact encompasses "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Here, J.M.P. provided the following testimony at trial:

[The Commonwealth]: Other than your mouth and your penis, did you have to use anything else?

[J.M.P.]: My hand.

[The Commonwealth]: And where did your hand have to touch?

[J.M.P.]: [Appellant's] penis.

***

[The Commonwealth]: [J.M.P.], did anything ever come out of [Appellant's] penis?

[J.M.P.]: Yes.

[The Commonwealth]: Can you -- do you know what it's called?

[J.M.P.]: Yes.

[The Commonwealth]: What's it called?

[J.M.P.]: Cum.

N.T. Trial, 1/21/2015, at 60-61. This testimony demonstrates that Appellant caused J.M.P. to have indecent contact with him. Given this testimony, we would agree with the trial court that there was sufficient evidence to convict Appellant of indecent assault.

Fifth, Appellant claims there was insufficient evidence to support his conviction of two counts of COM as to J.M.P. under 18 Pa.C.S. § 6301(a)(1) (effective until December 5, 2010) and 18 Pa.C.S. § 6301(a)(1)(ii) (effective as of December 6, 2010). Specifically, Appellant argues that "[w]ith regard to the two counts of [COM] with regard to [J.M.P.], the counts are delineated by virtue of the statutory changes in 2010, changing the grading when considering sexual offenses. [J.M.P.'s] testimony, however, was without times and dates other than the claim that the initial sexual contact occurred at the age of 6." Appellant's Brief at 24. Although Appellant provides no additional information on these "statutory changes" in his brief or why they are significant to his case, our research has uncovered that the COM statute

was amended on December 6, 2010 to include subsection (a)(1)(ii) concerning sexual offenses.[5] The amended statute states, in pertinent part:

> **(a) Offense defined.--**
>
> (1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals

---

[5] Before this statute was amended in 2010, it provided, in relevant part:

> **(a) Offense defined.--**
>
> (1) Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.
>
> (2) Any person who knowingly aids, abets, entices or encourages a minor younger than 18 years of age to commit truancy commits a summary offense. Any person who violates this paragraph within one year of the date of a first conviction under this section commits a misdemeanor of the third degree. A conviction under this paragraph shall not, however, constitute a prohibition under section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms).

18 Pa.C.S. § 6301(a) (effective until December 5, 2010).

of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

(2) Any person who knowingly aids, abets, entices or encourages a minor younger than 18 years of age to commit truancy commits a summary offense. Any person who violates this paragraph within one year of the date of a first conviction under this section commits a misdemeanor of the third degree. A conviction under this paragraph shall not, however, constitute a prohibition under section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms).

18 Pa.C.S. § 6301(a).

In short, the prior version of the statute included only current subsections (a)(1)(i) and (a)(2). Notably, subsection (a)(1)(i) was graded as a misdemeanor under the prior statute, and continues to be graded as such under the amended statute. Following the amendment in 2010, subsection (a)(1)(ii) regarding sexual offenses was introduced, and is graded as a felony. In this case, Appellant's misdemeanor COM charge as to J.M.P. relates to his conduct that occurred before the statute's amendment, while his felony COM charge as to J.M.P. pertains to his conduct after the effective date of the amended statute on December 6, 2010. As the Commonwealth pointed out at trial, the counts for COM as to J.M.P. have "different gradings, not because of different actions, but because the law changed in the middle of the incident…." N.T. Trial, 1/21/2015, at 7.

Based on the testimony elicited at trial, we would find the evidence sufficient to sustain both convictions. In this case, J.M.P. testified:

[The Commonwealth]: You mentioned to the [c]ourt you lived in four different states with [Appellant], right?

[J.M.P.]: Yes.

[The Commonwealth]: Where did the sexual touching happen?

[J.M.P.]: It happened in Pennsylvania, Missouri, and Kansas.

[The Commonwealth]: What about Florida? Did that happen there?

[J.M.P.]: No.

[The Commonwealth]: Now, when you say it happened in Pennsylvania, did this touching ever happen at the Betty Nelson house?

[J.M.P.]: Yes.

[The Commonwealth]: Do you know how old you were when that touching happened at Betty Nelson?

[J.M.P.]: Six.

[The Commonwealth]: And that's the best you can remember, six years old?

[J.M.P.]: Yes.

[The Commonwealth]: Do you know how old you were when the touching, the last time the touching happened in Pennsylvania?

[J.M.P.]: I can't remember.

***

[The Commonwealth]: When that kind of touching was happening on your penis, did [Appellant] have his clothes on?

[J.M.P.]: Sometimes, sometimes not.

[The Commonwealth]: The times when they were not on, who would take his clothes off?

[J.M.P.]: He would take his off.

[The Commonwealth]: Did that kind of touching happen at Betty Nelson?

[J.M.P.]: Yes.

[The Commonwealth]: Did that happen one time or more than one time?

[J.M.P.]: More than one time.

*Id.* at 54, 56. ***See also id.*** at 58-61 (describing various other sexual acts between J.M.P. and Appellant that each occurred "[m]ore than one time" at the Betty Nelson Trailer Park).

In addition, Trooper Benjamin Wilson, a criminal investigator with the Pennsylvania State Police, explained:

[The Commonwealth]: [C]an you confirm when the Betty Nelson address -- when the family lived there?

[Trooper Wilson]: I can. March -- my report states March 2010 through June 2012 lived at [a specific address in Carlisle, Pennsylvania]. And I have in parenthesis home rented from Betty Nelson.

[The Commonwealth]: At what point did the family move out of Pennsylvania?

[Trooper Wilson]: An exact date, I'm not sure, but from Pennsylvania, about that June 2012 timeframe[,] they leave Pennsylvania and move out west to Kansas, Missouri, that area, and were somewhat transient from 2012 to later in the year of 2012.

[The Commonwealth]: And when did the family reside in Florida?

[Trooper Wilson]: Sometime in the later part of 2012, I believe around November, they leave the Midwest and travel to Florida, and I believe it was Palm Bay, Florida was the town.

[The Commonwealth]: And when did the family return to Pennsylvania?

[Trooper Wilson]: I believe early -- I'm not referring to my report, but from memory it was early 2013. [The mother of D.T.M., J.M.P., and R.A.S.] and some of her children leave Florida and come back to her mother's home here in Cumberland County.

- 16 -

[The Commonwealth]: And if you look on there -- I know you said early 2013. If you look on that page 13 at the bottom of the timeline, what does that indicate?

[Trooper Wilson]: I'm sorry. November -- oh, I'm sorry, November 2012 to present. When I interview [D.T.M., J.M.P., and R.A.S.'s mother,] she tells me it was November of 2012 they left Florida and came to Carlisle to her mother's home.

N.T. Trial, 3/11/2015, at 24, 28-29.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we would conclude that the evidence was sufficient to infer that the sexual offenses at issue occurred both before and after December 6, 2010, when the amendment to the COM statute took effect. Trooper Wilson testified that J.M.P. and Appellant lived at the Betty Nelson house from March 2010 through June 2012. J.M.P. stated that he was first sexually abused by Appellant when he was 6 years old, that various sexual acts occurred more than one time while they lived at the Betty Nelson house, and that these acts continued to take place after the family moved to Missouri and Kansas in 2012. As such, we would regard the evidence as sufficient to establish that the sexual offenses at issue with respect to J.M.P. occurred at the Betty Nelson house both before and after the statutory changes on December 6, 2010. Further, Appellant has proffered no argument or authority in support of his attempt to convince us otherwise. As a result, we would conclude that the evidence is sufficient to sustain both of Appellant's COM convictions as to J.M.P.

Finally, Appellant contests the sufficiency of the evidence underlying his conviction for COM as to R.A.S. The trial court convicted Appellant of

COM as to R.A.S., under the amended statute's subsection (a)(1)(i). Appellant asserts that "the court found [Appellant] not guilty of all counts with regard to [R.A.S.] except the charge of [COM]. There was no testimony presented that would give rise to the charge of [COM] unless the court believed the testimony of [R.A.S.] that [Appellant] touched his penis." Appellant's Brief at 19.[6] According to Appellant, "[s]ince the court found [Appellant] not guilty of that act, there was no other testimony that would provide sufficient evidence to convict[] [Appellant]." *Id.*

In considering the offense of COM, this Court has previously observed that:

> The Commonwealth need not prove that the minor's morals were actually corrupted. Rather, a conviction for corrupting morals will be upheld where the conduct of the defendant tends to corrupt the minor's morals. The statute speaks to conduct toward a child **in an unlimited variety of ways** which tends to produce or to encourage or to continue conduct of the child which would amount to delinquent conduct.

*Commonwealth v. Slocum*, 86 A.3d 272, 277 (Pa. Super. 2014) (quoting *Commonwealth v. Mumma*, 414 A.2d 1026, 1030 (Pa. 1980)) (emphasis in original).

Moreover,

> [i]n deciding what conduct can be said to corrupt the morals of a minor, "'the common sense of the community, as well as the sense of decency, propriety and the morality which most people

---

[6] With respect to R.A.S., Appellant was found not guilty of unlawful contact with minor, 18 Pa.C.S. § 6318(a)(1), and indecent assault of a person less than 13 years of age, 18 Pa.C.S. § 3126(a)(7).

entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.'" Furthermore,

> [c]orruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

*Slocum*, 86 A.3d at 277-78 (quoting *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa. Super. 1997)) (internal citations and original brackets omitted).

Here, there appears to be ample testimony — aside from R.A.S.'s testimony that Appellant touched his penis — that would support Appellant's conviction of COM as to R.A.S. For instance, J.M.P. provided the following testimony concerning R.A.S.:

[The Commonwealth]: [W]as there ever anyone else around when this kind of sexual touching happened…?

[J.M.P.]: Yes.

***

[The Commonwealth]: Would there ever be any of your brothers or sister around?

[J.M.P.]: Yes.

[The Commonwealth]: Who?

[J.M.P.]: [R.A.S.]….

[The Commonwealth]: Do you remember how old [R.A.S.] … would have been when this was happening?

[J.M.P.]: No.

***

- 19 -

[The Commonwealth]: Did you ever see anything, any sexual touching happen to anyone else?

[J.M.P.]: Yes.

[The Commonwealth]: Who?

[J.M.P.]: [R.A.S.]….

[The Commonwealth]: And who was doing the sexual touching?

[J.M.P.]: [Appellant] would do it, and I would be there, too. I would have to do it.

[The Commonwealth]: You would have to do it, too?

[J.M.P.]: Like we would all have to lean up on each other and he would take pictures.

[The Commonwealth]: When you say he, who do you mean?

[J.M.P.]: [Appellant].

[The Commonwealth]: And when you would have to lean up on each other and [Appellant] would take pictures, what makes you think that that was a sexual -- you said that that was a sexual behavior.

[J.M.P.]: We were all naked.

[The Commonwealth]: Who -- why would you all be naked?

[J.M.P.]: Because he would have told us to take our clothes off, and he was taking pictures of us naked.

N.T. Trial, 1/21/2015, at 62-63.

Therefore, even if — as Appellant insists — the trial court did not believe R.A.S.'s testimony that Appellant touched his penis, the trial court could have convicted Appellant of COM as to R.A.S. based on J.M.P.'s testimony that Appellant touched J.M.P. around R.A.S., made J.M.P. touch R.A.S., and forced them to take their clothes off and "lean up on each other" while Appellant took pictures. *Id.* Surely, this conduct tended to corrupt

R.A.S.'s morals, and "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *See Slocum*, 86 A.3d at 277 (citing *Commonwealth v. DeWalt*, 752 A.2d 915, 918 (Pa. Super. 2000)). Consequently, we would deem the evidence sufficient to support Appellant's conviction of COM as to R.A.S.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2017

---

[7] As mentioned *supra*, Appellant seems to conflate sufficiency of the evidence with weight of the evidence. *See* Commonwealth's Brief at 8 ([Appellant's] sufficiency of the evidence argument sounds more in weight of the evidence."); Appellant's Brief at 23-24 (arguing, *inter alia*, that "there was no medical evidence to corroborate the alleged sexual abuse of [J.M.P.,]" and that "the delay in reporting should be taken into account by the finder of fact"). To the extent Appellant intended to challenge the weight of the evidence, we also would conclude that there is no merit to this claim, as we discern no abuse of discretion by the trial court. *See Leatherby*, 116 A.3d at 82 ("Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. … One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.") (citation omitted).